**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**UNITED STATES OF AMERICA**

**vs.**                                    **Case No. 4:07cr40-RH**
                                           **Case No. 4:10cv110-RH/CAS**

**CLAYTON SHUNDEL GEE,**

      **Defendant.**

_____/


## REPORT AND RECOMMENDATION TO DENY § 2255 MOTION

Before the Court is an amended motion to vacate, set-aside, or correct sentence pursuant to 28 U.S.C. § 2255, and a supporting memorandum filed by Defendant Clayton Shundel Gee, proceeding pro se.  Docs. 84 and 88.  The Government has filed a response in opposition to the motion.  Doc. 93.

The matter was referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(B).  After reviewing the record, the undersigned concludes no evidentiary hearing is required and the § 2255 motion should be denied. *See* 28 U.S.C.§ 2255 (providing that, "[u]nless the motion and the files and records of the case

conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon").

## Background and Procedural History

In the underlying criminal case, number 4:07-cr-40/RH, Defendant was charged in the Northern District of Florida by a seven-count Indictment:

(1) possession of a firearm by a convicted felon, on or about March 17, 2007, in violation of 18 U.S.C. § 922(g) and 924(a)(2);

(2) possession with intent to distribute a controlled substance, on or about March 17, 2007, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(iii), and 841(b)(1)(D);

(3) possession of a firearm in furtherance of a drug trafficking offense, on or about March 17, 2007, in violation of 18 U.S.C. § 924(c)(1)(A)(i);

(4) possession of ammunition by a convicted felon, on or about April 27, 2007, in violation of 18 U.S.C. § 922(g) and 924(a)(2);

(5) possession with intent to distribute a controlled substance, on or about April 27, 2007, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii);

(6) possession of a firearm in furtherance of a drug trafficking offense, on or about April 27, 2007, in violation of 18 U.S.C. § 924(c)(1)(A)(i); and

(7) possession of a firearm by a convicted felon, on or about June 4, 2007, in violation of 18 U.S.C. § 922(g) and 924(a)(2).

Doc. 13. The United States filed its Information and Notice of Intent to seek an enhanced sentence under 21 U.S.C. §§ 841 and 851 on August 8, 2007. Doc. 23. A jury trial was ultimately set for November 5, 2007, before Judge Robert Hinkle. Doc. 29.

A couple of weeks before trial, Defendant filed a letter to the judge asking for a "Conflict Attorney," construed as a motion for appointment of substitute counsel. Doc.

34.  In this filing, Defendant stated that he felt he was getting "ineffective representation" by his current assistant public defender, William R. Clark, Jr.  *Id.*  Defendant explained that he had not been shown any investigation report, no depositions had been taken, no motion to suppress had been filed despite Defendant's request, and counsel had provided no advice "except for trying to shove a plea down my throat with no valid explanations as to why I need to take this plea or anything I can refer to."  *Id.*  Judge Hinkle held a hearing on this motion on October 25, 2007.  Doc. 35; *see* Doc. 61.

During the motion hearing, Defendant reiterated his complaints about his counsel.  Doc. 61 at 3-4.  The judge advised Defendant that, "Under the Federal Rules of Criminal Procedure, depositions ordinarily cannot be taken in federal criminal cases." *Id.* at 3.  Counsel advised the court that he had shared all the evidence provided by the Government as well as from his own review, and he was still willing to represent Defendant.  *Id.* at 4.  Concerning Defendant's request for a motion to suppress, the court heard the prosecutor describe the searches that took place in this case.  *Id.* at 9-12.  The judge asked Defendant if there were any other complaints about counsel and Petitioner said there were not.  *Id.* at 12.  The court denied the motion for substitute counsel, explaining that although it is preferable that every defendant be satisfied with his lawyer, it would waste a lot of funds to grant every such request and, in this case, "there has not been any suggestion of anything that Mr. Clark has done other than simply provide effective representation."  *Id.* at 13.

The jury trial took place on November 7 and 8, 2007.  Docs. 70, 66.  Defendant did not testify at the trial.  *See* Doc. 66 at 444.  The jury returned a verdict of guilty on all counts.  Doc. 45; *see* Doc. 66 at 503-05.

A sentencing hearing took place on January 30, 2008.  The court imposed the minimum mandatory sentence of 480 months' total incarceration – 120 months on each of counts 2 and 5, to run concurrently; 92 months on counts 1, 4, and 7, to run concurrently with each other and with the sentences imposed on counts 2 and 5; 60 months on count 3, to run consecutive to the sentences on counts 1, 2, 4, 5, and 7; and 300 months on count 6, to run consecutive to sentences on all other counts – 8 years of supervised release, and a $700 special monetary assessment.  Doc. 53 at 3, 5, 9; Doc. 54 at 2; Doc. 67 at 28-32.

Defendant appealed his conviction and argued the district court abused its discretion in denying his motion for substitute counsel.  Doc. 74.  The Eleventh Circuit affirmed.  *Id.*; United States v. Gee, 291 F. App'x 997 (11th Cir. Sept. 10, 2008), *cert. denied*, 129 S.Ct. 1634 (Mar. 23, 2009).

On March 21, 2010, through counsel, Defendant filed a motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct sentence.  Doc. 81.  Defendant subsequently filed an amended § 2255 motion, pro se, as well as a supporting memorandum.  Docs. 84, 88.

## Analysis

In his amended § 2255 motion, Defendant raises four grounds alleging ineffective assistance of counsel (IAC).  *See* Doc. 84.  To prevail on such a claim, Defendant must

demonstrate: (1) counsel's performance was deficient, falling below an objective standard of reasonableness, and (2) prejudice as a result of that deficient performance. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). The court need not address both deficient performance and prejudice where a defendant makes an insufficient showing as to one. *Id.* at 697. It is presumed that counsel's performance was objectively reasonable, so for Defendant to show it was unreasonable, he "must establish that no competent counsel would have taken the action that his counsel did take." Chandler v. United States, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc), *cert. denied,* 531 U.S. 1204 (2001). For prejudice, Defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

Defendant "bears the burden of proof on the 'performance' prong as well as the 'prejudice' prong of a Strickland claim, and both prongs must be proved to prevail." Johnson v. Alabama, 256 F.3d 1156, 1176 (11th Cir. 2001), *cert. denied*, 535 U.S. 926 (2002). The cases which prevail under Strickland "are few and far between." *Id.*

### Ground 1:  IAC – Failure to Object to (a) Inadmissible Hearsay and (b) Improper Impeachment by Government

In Ground 1, Defendant alleges IAC of trial counsel for failure to object (a) to the introduction of inadmissible hearsay testimony as to Counts 2 and 3 from officers who responded to the scene of a 911 call and (b) to the Government's improper impeachment of its own witness, Andrea Clark. Doc. 84 at 6-9. Defendant asserts that

the primary evidence against him on Counts 4, 5, and 6 came from the hearsay

testimony of police officers who had responded to a 911 call made on April 27, 2007, by

Andrea Clark – the officers testified as to statements allegedly made to them by Andrea

Clark. *Id.* at 7. Specifically, the officers testified that Ms. Clark told them Defendant had

left with a bag and that she identified as Defendant's, the bag the officers later found,

which contained the firearm involved in Counts 4 and 6, and next to which was found

the drugs alleged in Count 5. *Id.* Defendant asserts this was inadmissible hearsay but

Defendant's counsel made no objection. *Id.* Defendant further asserts that the

Government then called Ms. Clark to testify, knowing she would deny the statements

attributed to her by the officers; and when she did, the Government introduced her

otherwise inadmissible hearsay statements, the oral and written statements allegedly

made to the officers, and grand jury testimony. *Id.* Defendant asserts this was

impermissible but defense counsel did not object. *Id.* According to Defendant, without

this evidence, the court cannot be confident beyond a reasonable doubt that the verdict

as to these three counts would have been the same. *Id.* at 8.

In response, the Government explains that, as to Counts 2 and 3, Defendant was

convicted of offenses that occurred on March 17, 2007 – possession of more than five

(5) grams of cocaine base with intent to distribute and possession of a firearm in

furtherance of a drug trafficking offense. Doc. 93 at 12. The Government asserts that,

concerning the allegedly inadmissible hearsay testimony, Defendant appears to be

referring to the trial testimony of Sergeant Anthony Lamar Brown. *Id.*

Testimony of Sergeant Anthony Lamar Brown

Sergeant Brown, with the Gadsden County Sheriff's Department, testified at trial that on March 17, 2007, he stopped Defendant on a two-lane highway leading into Quincy, for passing on a double yellow line and speeding.  Doc. 70 at 28, 31, 35, 37. Sergeant Brown noticed that Defendant was not wearing a seat belt, something for which he could also ticket him.  *Id.* at 36.  While conversing with Defendant, Sergeant Brown noticed "[a] very strong odor of what I thought to be marijuana coming from the vehicle."  *Id.* at 39.  Sergeant Brown testified that it smelled like "someone had been smoking marijuana inside of the vehicle."  *Id.*  Sergeant Brown then returned to his patrol car, to run a check on Defendant's license and the response advised him that Defendant had a suspended license.  *Id.* at 40.  About this time, another deputy had also responded to the scene, Reserve Deputy Ronnie Williams.  *Id.* at 41-42.  Sergeant Brown informed Deputy Williams that he was going to arrest Defendant for driving with a suspended license; he also wrote Defendant a citation for the seatbelt violation, with a warning for driving 78 miles per hour in a 55-mile-per-hour zone, as well as a citation for driving with a suspended license.  *Id.* at 43-45.  The officers approached Defendant's vehicle, one each side, for safety reasons, and asked Defendant to get out of the car, which he did.  *Id.* at 45-46.  Deputy Williams explained to Defendant that his license was suspended.  *Id.* at 47.  Deputy Williams asked Defendant if he had "anything on you illegally" and Defendant answered "yes."  *Id.*  Deputy Williams asked Defendant about what he had, and Defendant answered that he had "a little bit of marijuana on him."  *Id.* at 47; *see id.* at 73.  The officers then conducted a pat-down, during which marijuana

was found in Defendant's front right pocket; the officers also found "an undisclosed amount of cash" (later determined to total $340) and "a small clear plastic bag with some pills in it." *Id.* at 48, 60. Sergeant Brown asked Defendant what the pills were and Defendant told him they were Ecstasy, a street term for an illegal controlled substance. *Id.* at 48, 65. Defendant was arrested, handcuffed, and placed in Deputy Williams' car. *Id.* at 52, 73. Defendant also consented to a search of the vehicle, which Sergeant Brown testified would occur as part of the arrest and impoundment of the vehicle, regardless of whether Defendant gave consent. *Id.* at 52-53. During the search, Sergeant Brown found on top of the console between the driver and passenger seats, a small white baby wipe container, with a small amount of crack cocaine inside it. *Id.* at 54, 57, 69. The officers also found a loaded pistol (Rossi, Model M88, .38 special caliber, 5-shot revolver) inside the console, which the officers determined, from running the serial numbers, had been stolen from Tallahassee. *Id.* at 54, 57-58, 60-61.

Counts 2 and 3 resulted from these events on March 17, 2007. *See* Doc. 13. Contrary to Defendant's assertion, nothing indicates these officers were responding to a 911 call. *See* Doc. 84 at 6. As the Government indicates, the statements Defendant made to the officers on March 17, 2007, were admissions by Defendant and properly admitted pursuant to Federal Rule of Evidence 801(d)(2)(A). *See* Doc. 93 at 12. These statements were not hearsay. Fed. R. Evid. 801(d)(2)(A). Therefore, Defendant's trial counsel was not deficient or ineffective for failing to object.

As to the testimony of Ms. Clark, the Government explains that Federal Rule of Evidence 613(a) permits a witness to be questioned concerning prior statements. Doc.

93 at 13. In addition, Federal Rule of Evidence 607 provides that "[t]he credibility of a witness may be attacked by any party, including the party calling the witness." Accordingly, the Government's questioning of Ms. Clark regarding her prior inconsistent oral and written statements was proper. Defendant's trial counsel was not deficient or ineffective for failing to object.

Finally, to the extent Defendant is also challenging, as to Counts 4, 5, and 6, the officer's testimony concerning Ms. Clark's statements to them when they responded to the 911 call she made on April 27, 2007, the Government has not specifically responded. *See* Doc. 93 at 12-13. Defendant states that "the Government presented the responding officers who then testified as to statements allegedly made to them by Andrea Clark." Doc. 84 at 7. Specifically, the officers testified that Ms. Clark told them Defendant had left with a bag and that she identified as Defendant's the bag the officers later found, which contained the firearm involved in Counts 4 and 6, and next to which was found the drugs in Count 5. *Id.* Defendant asserts this was inadmissible hearsay but Defendant's counsel made no objection. *Id.* A review of the officer's testimony concerning those statements reveals that Defendant's trial counsel was not deficient or ineffective and, further, that he raised a successful hearsay objection during the officer's testimony.

<u>Testimony of Officer Aaron Scott</u>

Tallahassee Police Department Patrol Officer Aaron Scott testified at trial that he responded to a 911 call on April 27, 2007. Doc. 70 at 79, 84. He testified that call was a Priority One call, meaning it was of the highest priority. *Id.* at 83. A Priority One may

involve "[a]nything from burglary in progress – anything that's occurring at that time, whether it be a burglary in progress, a murder, a battery, a robbery – things of that nature." *Id.* at 84. This particular call was described as a battery in progress. *Id.* at 85. Officer Scott testified, "I believe we got some notes indicating that the suspect had battered and tried to choke the victim." *Id.* Other notes indicated 'there was some discussion about the suspect having a firearm." *Id.* at 86. Officer Scott was the first one on the scene, arriving with lights and siren, at the Spanish Oaks Apartment Complex on High Road; he shut down the lights and siren as he entered the complex. *Id.* at 86-87, 93. Officer Scott parked and exited his car, in full uniform; as he approached the apartment building, he saw an individual running away and the individual kept looking back at him as he was running. *Id.* at 94. Officer Scott continued toward the building and saw the victim coming down the stairwell, toward him. *Id.* at 95. Officer Scott asked her if she was okay and she said, "He left, he left." *Id.* at 96. Officer Scott saw no other vehicles and no other people. *Id.* at 97. He got the victim's name, Andrea Clark, and observed her demeanor, which he described as "[s]haken, upset," and "[v]ery distraught" and "[v]ery upset." *Id.* at 98. Officer Scott testified that "she didn't show anything that she had been battered" and "didn't have any abrasions that I could see." *Id.* She described the person who had assaulted her. *Id.* at 100. Officer Scott spoke with Ms. Clark outside the apartment building until a backup officer arrived, Officer Lyons. *Id.* at 99. Ms. Clark told the officers that he no longer had the weapon and that he had locked it in the safe in the apartment. *Id.* at 102. Officer Scott testified he "repeatedly asked her to make sure that he was gone, that he did not have a weapon,

mainly for the safety of the officers out looking for him." *Id.* at 102. They then entered

the apartment. *Id.* at 99, 102. Officer Scott observed signs of a fight or altercation in

the apartment – a broken cell phone on the floor, large holes in the wall – in an

otherwise neat apartment. *Id.* at 99-100. Officer Scott testified this was consistent with

Ms. Clark's description of what had occurred, being thrown into the wall. *Id.* at 99-100.

Ms. Clark pointed out photographs of the suspect (Defendant) in the apartment and

gave his name to the officers. *Id.* at 101. Officer Scott testified this matched the

individual he had observed running away from the apartment, except that Ms. Clark

indicated that Defendant was carrying two black-and-yellow bookbags when he left. *Id.*

at 101, 103. Officer Scott asked Officer Lyons to get a sworn statement from Ms. Clark

because Ms. Clark, at that time, wanted to press charges for the battery and the

damage to the apartment. *Id.* at 103. Officer Scott decided to retrace Defendant's

steps, where he had seen him run, to see if he left the bags. *Id.* at 103. Officer Scott

also called a canine unit to do "[a]n article search" for the bags. *Id.* at 106-07. As

Officer Scott walked along the concrete and asphalt, he looked into a wood line at the

edge of the apartment complex and noticed a black-and-yellow bookbag on the

opposite side of a chain-link fence, actually two bags side by side. *Id.* at 107, 110. He

waited there for the canine officer. *Id.* at 108. The canine officer went around the fence

to the area where the bags were. *Id.* at 108-09. The canine officer found a "cookie" of

crack cocaine beside the bags. *Id.* at 109-110. The officers picked up the bags and

took them to the patrol unit and opened them up on the trunk. *Id.* at 113. One of the

bags contained a firearm (an Intratec TEC-9, 9-millimeter semiautomatic) along with a

magazine with some hollow-point ammunition inside of it. *Id.* at 115-17. Officer Scott

ran a check on the gun's serial number and determined the gun had been reported as

stolen. *Id.* at 120-21. In the second bag, Officer Scott found two cellophane bags that

contained uncut powder cocaine along with a picture of Defendant and others. *Id.* at

121-22. That second bag also contained 290 grams of marijuana, latex gloves, unused

baggies, and a small silver scale with cocaine residue. *Id.* at 122-23, 125-26. Notably,

at one point in this testimony, after Officer Scott stated they put all these items back

inside the bags, he said, "As I stated earlier, Ms. Clark was the one that –" at which

point defense counsel made a hearsay objection, which the court sustained. *Id.* at 130-

31. Officer Scott testified the officers then returned to the apartment; Ms. Clark was still

there. *Id.* at 131. The officers found a third bag in the apartment – Ms. Clark had given

them consent to come back into the apartment and she had brought the bag to their

attention. *Id.* This bag matched the bag in which Officer Scott had found the TEC-9,

except that this bag was damaged and had nothing inside of it. *Id.* at 132. The officers

also verified that a gun was in the safe on the floor of the apartment. *Id.* at 133. Ms.

Clark gave them consent to access the safe; however, they could not get it open. *Id.* at

134. One officer shone his flashlight through a hole in the back of the safe and verified

that there was a Taurus .40 caliber inside. *Id.* at 134. That gun belonged to Ms. Clark,

so the officers did not seize it and left it there. *Id.* at 134-35. Officer Scott testified that

Ms. Clark identified the bags found outside as belonging to Defendant. *Id.* at 136. This

was after the officers had replaced all of the items they found back inside the bag –

"they were just two bookbags sitting on the trunk." *Id.* Defense counsel cross-examined Officer Scott. *See* Doc. 70 at 143-56.

In his § 2255 motion, Defendant takes issue with Officer Scott's testimony that (1) Ms. Clark told the officers Defendant had left with a bag and (2) Ms. Clark identified the outside bags as belonging to Defendant. Doc. 84 at 7. These statements appear to have been made in the course of the investigation resulting from the officers' response to the 911 "priority one" call about the battery in progress. The Statement (1) resulted from Ms. Clark's description of her attacker, which included height, weight, clothing, and what he was carrying. Doc. 70 at 103. This became significant to Officer Scott because he had personally observed the individual running away and that individual was not carrying any bags. *Id.* This then resulted in Officer Scott conducting further investigation to see if he could locate the bags outside, which he did. *Id.*

In Statement (2), Ms. Clark identified the bags Officer Scott found outside, in the course of the investigation, as belonging to Defendant. This identification follows from Ms. Clark's description of Defendant as having left carrying two bags. Given that the 911 call notes indicated the attacker had a gun, officer safety was a concern – making sure the officers looking for Defendant were as informed as possible. Further, even assuming counsel was deficient for failing to object to this testimony, such did not result in prejudice to the Defendant because a photograph depicting Defendant, albeit with five or six other people, was also found in one of the outside bags. Therefore, even if Defendant has shown deficient performance, Defendant has failed to show any prejudice. Accordingly, this IAC claim fails.

**Ground 2:  IAC – Failure to Object to (a) Evidence of Other Crimes or Bad Acts,
(b) Witness's Opinion of Defendant's Truthfulness, and
(c) Agent's Testimony concerning Elements of Charges in Counts 3 and 6**

In Ground 2, Defendant alleges IAC of trial counsel for failure to object to (a) the introduction of inadmissible evidence of other crimes, wrongs, or bad acts, specifically (i) domestic battery allegations, (ii) possession of personal use amounts of marijuana, and (iii) prior criminal offense reports relating to Defendant; (b) the Government's solicitation of another witness's opinion about Ms. Clark's truthfulness; and (c) Government counsel's asking the ATF case agent to explain the elements of the charges under 18 U.S.C. § 924(c) and given an opinion on the ultimate issue concerning counts 3 and 6.  Doc. 84 at 9-13.  Defendant asserts the Government made the domestic battery allegations a feature of the trial and there had been no notice under Rule 404(b) of any intent to introduce such evidence.  *Id.* at 10.  The domestic battery evidence was not so intertwined with the charged offenses in Counts 4, 5, and 6, as to authorize its admission.  *Id.*  This evidence was more prejudicial than probative and not relevant to the issues at trial.  *Id.*  The same is true of the evidence concerning Defendant's possession of personal use amounts of marijuana and the testimony of the officers about obtaining information to locate Defendant from review of other offense reports.  *Id.* at 10-11.

### (a)(i) Domestic Battery Evidence

As to the domestic battery evidence, the Government responds that the evidence of the 911 calls as well as the responding officer's testimony that he observed Ms. Clark was distraught and the apartment was damaged, were inextricably intertwined with the

charges in Counts 4, 5, and 6.  Doc. 93 at 14.  The Government asserts this testimony was admissible because it formed "an integral and natural account" of Defendant's April 27, 2007, crimes and "was necessary to complete the story" of the crimes.  *Id.*; *see* United States v. McLean, 138 F.3d 1398, 1402 (11th Cir. 1998); United States v. Fortenberry, 971 F.2d 717, 721 (11th Cir. 1992).  The probative value was not outweighed by the danger of unfair prejudice – the evidence was not unfairly prejudicial – and the balance under Rule 403 should be struck in favor of admissibility.  Doc. 93 at 14.  The Government argues the description of the domestic violence was not gruesome or unnecessary, and it simply provided background for why the officers were at the apartment and connected Defendant to the gun in the safe and the gun, ammunition, and drugs found in backpacks outside.  *Id.* at 14-15.  The evidence was relevant and necessary to establish Defendant's possession of the drugs and both firearms.  *Id.* at 15.

The Government's response is well-taken.  As set forth above, the testimony of Officer Scott, the officer who responded to the 911 "Priority One" call about a domestic battery in progress, explains why he was at the apartment complex on April 27, 2007, and why he searched for the bookbags, which he ultimately found and which contained the firearm and drugs that formed resulted in the charges in Counts 4, 5, and 6.  From a review of that testimony, it does not appear the Government made the domestic battery allegations a feature of the trial, contrary to Defendant's assertion.  Defendant's trial counsel was not deficient for failing to object to this testimony and, therefore, was not ineffective.

<u>(a)(ii) Personal Use Marijuana</u>

Defendant asserts in his motion, in a conclusory statement, that the evidence of his possession of personal use amounts of marijuana was more prejudicial than probative and not relevant to the issue at trial. Doc. 84 at 10-11. In his supporting memorandum, Defendant makes the same conclusory statement, with no supporting argument or citations to the record or authority. Doc. 88 at 6. The Government has not specifically responded to Defendant's argument concerning the evidence of his possession of personal use amounts of marijuana. *See* Doc. 93 at 13-20.

To the extent Defendant refers to the testimony of Sergeant Brown, detailed above, and his recounting of the traffic stop on March 17, 2007, Defendant's argument lacks merit. Sergeant Brown testified that, when he approached the vehicle Defendant was driving, which he had stopped for speeding and passing on a double yellow line, he noticed "[a] very strong odor of what I thought to be marijuana coming from the vehicle" and testified that it smelled like "someone had been smoking marijuana inside of the vehicle." Doc. 70 at 39. After another officer arrived, Sergeant Brown told him he was going to arrest Defendant for driving with a suspended license; the officers then approached the vehicle and the other officer asked Defendant if he had anything illegal. *Id.* at 43-47. Defendant answered "yes" and that he had "a little bit of marijuana on him." *Id.* at 47. The officers then conducted a pat-down and Sergeant Brown testified they found marijuana in Defendant's front right pocket. *Id.* at 48.

Defendant was charged, in Count 2, with possession of marijuana (or cocaine base) on March 17, 2007, with the intent to distribute it. *See* Doc. 13; Doc. 66 at 483,

503.  Sergeant Brown's testimony related to this charge, and trial counsel was not

deficient for failing to object to this testimony.

### (a)(iii) Prior Criminal Offense Reports

As with the reference to personal use marijuana, Defendant asserts in his

motion, in a conclusory statement, that the evidence of prior criminal offense reports

was more prejudicial than probative and not relevant to the issue at trial.  Doc. 84 at 10-

11.  Defendant indicates trial counsel should have objected to "the testimony of the

fugitive task force officers about obtaining information to locate [him] based on review of

other offense reports."  *Id.* at 11.  In his supporting memorandum, Defendant again

makes a conclusory statement about "prior criminal offense reports" being more

prejudicial than probative and references "[t]he toxic quality of prior crimes evidence."

Doc. 88 at 6, 8.  Other than referencing the alleged domestic battery, however,

Defendant does not explain the "prior criminal offense reports" to which he is referring.

*Id.* at 6-10.  The Government has not specifically responded to Defendant's argument

on this point.  *See* Doc. 93 at 13-20.

To the extent Defendant references the domestic battery, as explained in the

analysis of (a)(i), *supra*, trial counsel was not deficient for failing to object to that

testimony.  To the extent Defendant may be referring to the testimony of Deputy U.S.

Marshal Marty West concerning investigation that led to Defendant's apprehension on

June 2007, Defendant's argument also fails, as explained below.

Testimony of Deputy U.S. Marshal Marty West

In particular, Deputy U.S. Marshal Marty West testified he was contacted on May

30, 2007, by Special Agent Mary Downie of the Bureau of Alcohol, Tobacco, Firearms,

and Explosives (ATF), for assistance in locating and apprehending Defendant.  Doc. 70

at 243, 247.  Agent Downie had procured a federal arrest warrant for Defendant.  *Id.* at

247.  Deputy West explained what is done when a warrant is received and they are

looking for an individual:

> The first thing we do when we receive a felony warrant for the
> arrest of an individual, we will look at everything from their criminal
> background, we will pull a photo, we will find out who their mother, their
> father, brother, and sisters, girlfriends, boyfriends, family members,
> associates.  Anybody that they possibly could be with, be around or living
> with, we will try to identify that person.  Get their address.  Find out what
> kind of cars they drive.  Where they work.  We, basically, build a complete
> file and try to figure out where the fugitive may be located.

*Id.* at 248.  Deputy West testified that they tried to get as much background information

as possible and, further, that "[w]e'll usually run an individual's name through either the

Tallahassee Police Department or Leon County Intelligence Units" and with a name,

"[t]hey can pull up if the person has been a victim of a crime, has been the subject of an

investigation, and it will give us dates, times, who other victims or witnesses may have

been, and that's also a lead that we use." *Id.* at 248-49.  Deputy West testified that

Agent Downie provided them with "some offense reports" regarding Defendant.  *Id.* at

249.  From that information, they identified some of Defendant's family members and

their addresses as well as "one of [Defendant's] current girlfriends that we knew about

that was listed in an offense report and where she was living at," Andrea Clark.  *Id.*

They identified Defendant's sister, previous girlfriends, and children.  *Id.* at 249-50.

They "pretty much well worked [Defendant] constantly from the day we received the

warrant on May the 30th up until the day of his arrest on June 5th."  *Id.* at 251-52.

Deputy West testified they interviewed Ms. Clark and also set up surveillance outside

the sister's home, watching the vehicles and people coming and going.  *Id.* at 251-59.

They ultimately issued a "Be on the Look Out" (BOLO) on June 5, 2007, a broadcast

request sent to the Florida Highway Patrol and the Gadsden County Sheriff's Office.  *Id.*

at 259.  They then sent officers to all addresses relevant to Defendant and ultimately

apprehended and arrested Defendant.  *Id.* at 260-64.

Nothing in this testimony appears objectionable.  Deputy Marshal West was

explaining how they conduct their investigation and obtain information that assists them

in apprehending an individual.  The brief reference to "some offense reports" does not

appear prejudicial – those offenses were not explained or elaborated and possibly may

have consisted of only the March 17 and April 27 offenses, particularly given the

testimony about interviews of Ms. Clark.  (Agent Downie also testified that she was

asked by the Tallahassee Police Department to investigate, because of Defendant's

arrests on March 17 and April 27, which led to the federal arrest warrant.  Doc. 70 at

319.)  Defendant has not shown deficient performance of trial counsel in failing to object

to this testimony.

### (b) Opinion Testimony of Truthfulness

In his § 2255 motion, Defendant asserts trial counsel should have objected to the

Government's improper solicitation of the opinion of Government witnesses concerning

Andrea Clark's truthfulness. Doc. 84 at 11. In his memorandum, Defendant argues that

although Federal Rule of Evidence 608(a) permits a party to challenge the credibility of

a witness using "evidence in the form of reputation and opinion," a district court is not

required to admit such testimony. Doc. 88 at 11. Defendant asserts that the prejudice

of such testimony in his case outweighed the probative value, and it would have been

an abuse of discretion for the trial court to have allowed the testimony of the

Government agents' personal opinions of Clark's truthfulness. Doc. 88 at 11-12.

It its response, the Government points out that Defendant has failed to identify

the opinion testimony that was admitted concerning Ms. Clark's truthfulness. Doc. 93 at

15. The Government indicates that Defendant may be referring to Officer Aaron Scott's

testimony on recall regarding two written and sworn statements Ms. Clark gave to the

police on April 27, 2007. *Id.*; *see* Doc. 70 at 238-41 and Exs. 51, 52. The Government

further indicates the Defendant may be referring to the testimony of ATF Agent Downie.

Doc. 93 at 16; *see* Doc. 70 at 322.

As indicated above, Officer Scott testified that he asked Officer Lyons to get a

sworn statement from Ms. Clark because she indicated she wanted to press charges for

the domestic battery and the damage to the apartment. Doc. 70 at 103. Later in the

presentation of its case, after Ms. Clark's testimony, the Government recalled Officer

Scott, who testified that he took two written, sworn statements from Ms. Clark and Ms.

Clark wrote her statements using her own words, signing them in his presence. Doc. 70

at 237-39, 243; Ex. 52. Officer Scott testified that Officer Lyons took the first statement

from Ms. Clark.  Doc. 70 at 239; Ex. 51.  Officer Scott read from one of Ms. Clark's

statements, Exhibit 52:

> Ms. Clark wrote, "The safe inside the house where he put the gun in
> belongs to him.  There was a bag inside the house that did not belong to
> me that was in question, along with two other bags that the officer found
> that belonged to Clayton."

Doc. 70 at 241-42.

Ms. Clark had testified at trial, just before the Government recalled Officer Scott.

*See* Doc. 70 at 162-236.  Clark identified Exhibits 51 and 52 as her prior written

statements.  *Id.* at 192, 195.  Clark testified that the officers told her what to write in her

statements.  *Id.* at 195, 197.  The Government questioned Clark using the prior

statements.  Doc. 70 at 192-96 and Exs. 51, 52.  Nothing appears improper about this

questioning or the questioning of Officer Scott on recall.

ATF Agent Downie testified about her multiple interviews of Ms. Clark.  Doc. 70

at 322.  The following exchange occurred between the prosecutor and Downie:

> Q. Now, did you have an opportunity to speak with Ms. Clark on more than
> one occasion?
>
> A. Yes, I did.
>
> Q. And the members of the jury have had a chance to see her testify here,
> but how would you characterize, from your perspective, in terms of her
> level or willingness to cooperate with you, in terms of how honest she was
> in answering your questions?
>
> A. There were certain things that she was answering honestly, but she
> was very reluctant to provide us with information.
>
> Q. And was that consistent throughout your interviews with her?
>
> A. Yes, it was.

Q. And that's more than one interview?

A. That's correct.

Q. And did that come to any surprise to you, considering the relationship that you knew she had with the defendant?

A. No, it didn't.

Doc. 70 at 322. Given the earlier testimony from Clark, nothing about this line of questioning appears improper.

Based on the foregoing, Defendant has not shown deficient performance by trial counsel in failing to object to testimony from Officer Scott and Agent Downie or the questioning of Clark about her prior statements. This IAC claim should be denied.

### (c) ATF Agent's Testimony

Defendant argues the Government improperly solicited the testimony of the ATF Agent on the legal elements of the § 924(c) offenses, including the Agent's inadmissible opinion that the evidence satisfied those elements. Doc. 84 at 11. In his supporting memo, Defendant asserts that "[i]t was improper to allow the case agent to direct the verdict for the jury by opining that Gee's conduct violated the statute" and, further, the agent's testimony was "wrong as a matter of law" on the interpretation of "use in furtherance." Doc. 88 at 13-14.

The Government responds that ATF Agent Downie summarized the evidence supporting the two § 924(c) offenses. Doc. 93 at 17. The Government explains that Agent Downie did not misstate the law and did not express her opinion of Defendant's guilt. *Id.*

The § 924(c) offenses were Counts 3 and 6, possession of a firearm in furtherance of a drug trafficking offense on March 17, 2007 (Count 3), and April 27, 2007 (Count 6). Doc. 13. Agent Downie testified as follows, in response to questions from the prosecutor:

> Q. All right. Now, agent, in this indictment pending against the defendant, he is also charged with violations related to the possession of a firearm in furtherance or in the context of a drug-trafficking offense, correct?
>
> A. Correct.
>
> Q. Now, under that statute, is it necessary that the person actually show the weapon or exhibit the weapon?
>
> A. No, it's not. It's possession.
>
> Q. And does "possession" mean more than that, in terms of it actually being shown or exhibited?
>
> A. The possession -- I'm sorry. Could you repeat?
>
> Q. Well, does "possession" mean that it has to be actually on the person, in their actual possession?
>
> A. No. It can be actual or constructive; and constructive being that it's not physically on the person, but they exercise dominion and control over the area in which the item is located, the firearm.
>
> Q. Would the proximity of the firearm to the actual controlled substances, which are the subject of the drug-trafficking crime, be significant?
>
> A. Yes, it would.
>
> Q. And in this case was there a consistency in the fact that the firearm is found directly in proximity with the controlled substances alleged?
>
> A. Yes. In each case, every time there's a firearm recovered, it's in close proximity of narcotics.
>
> Q. That being the console of the Infiniti?

A. Yes. There was crack on top of the console, and the firearm in the console.

And on the April 27th incident, there was a backpack which contained large quantities of narcotics and the other backpack containing the firearm.

And then, again, on June 5th, we have Mr. Gee being arrested with marijuana in his pocket and little Baggies in the side pouch indicative of narcotics trade; and then, of course, there's a firearm readily accessible in the glove box.

Doc. 70 at 351-53.

The Agent's testimony helped explain terms used in the charges and appears relevant in this case given the circumstances of the offenses, with the guns being found in a car and in a bag. As the Government explains, Agent Downie's testimony mirrored the jury instructions provided by the Court. *See* Doc. 93 at 19. As the Government further explains, contrary to Defendant's argument, Agent Downie did not define the phrase "use in furtherance." Doc. 93 at 20; *see* Doc. 70 at 351-52. Defendant has not shown deficient performance by trial counsel and this IAC claim should be denied.

### <u>Ground 3</u>: IAC – Failure to Move for Judgment of Acquittal

In Ground 3, Defendant alleges IAC of trial counsel for failure to move for a judgment of acquittal (JOA) pursuant to Rule 29(c) after the jury returned a guilty verdict on Counts 3 and 6, because the general jury verdicts did not indicate which of the two charged theories (possession or carrying) in these counts it had unanimously found. Doc. 84 at 13. Defendant asserts that the ATF Agent testified that as a matter of law, the evidence established Defendant was guilty of possession of the firearms in Counts 3 and 6 in furtherance of a drug trafficking crime, and yet the opposite was true – as a

matter of law, the evidence did not support the "possession in furtherance" theory of the indictment, but satisfied only the "carrying during and in relation" theory. *Id.* Therefore, one of the two charged theories was legally insufficient and the verdict as to Counts 3 and 6 would have been vacated if defense counsel had moved for a JOA after the verdict. *Id.* Defendant further asserts appellate counsel rendered ineffective assistance for failing to raise this as an argument on appeal. *Id.* at 14.

In response, the Government argues the Eleventh Circuit's 2003 pattern jury instruction for section 924(c)(1)(A) offenses (instruction number 35.2) provided that where a defendant is charged with carrying a firearm during and in relation to a drug-trafficking crime, as well as possessing a firearm in furtherance of a drug-trafficking crime, "[i]t is sufficient if the Government proves, beyond a reasonable doubt, that the Defendant knowingly violated the law in either way; but, in that event, you must unanimously agree upon the way in which the Defendant committed the violation." Doc. 93 at 21. The instruction in the 2010 edition provides that "[t]he Government has to prove only one of those ways, not both. But to find the Defendant guilty you must all agree on which of the two ways the Defendant violated the law." Doc. 93 at 21-22. The Government states that, in this case, the trial court did not tell the jury that they had to agree on which of the two ways Defendant violated section 924(c). Doc. 93 at 22. The Government points out that neither party requested such an instruction or a special verdict. *Id.* The Government argues, further, that Defendant cannot establish prejudice for any deficiency in counsel's performance, because the evidence supported both

theories of "carrying a firearm during and in relation to a drug trafficking crime" and "possession of a firearm in furtherance of a drug trafficking crime." *Id.*

In discussing the jury instructions and verdict form, the trial judge acknowledged the language in the standard jury instruction and gave the following explanation to the attorneys:

> Then, on the charges, the 924(c) charges, the standard instruction says – and I assume it is an accurate statement of the law – that the jury has to agree unanimously on at least one of the methods by which the offense could be committed, either possession in furtherance of or carrying during and in relation to the drug-trafficking offense. That makes for somewhat a convoluted instruction that explains all of that. I'm happy to do it. In this case, it seems to me not to be an issue at all.
>
> So, the way I've done it is just to describe the offense in terms of possession in furtherance of or carrying during and in relation to, without the additional explanation of the need to unanimously agree on one or the other.
>
> I'll be happy to give the longer form if either side wants that; but; since, on the facts of this case, it seemed to make absolutely no difference, I've done it the simpler way.

Doc. 66 at 365-66. Neither side indicated anything in response at that point. *Id.* at 366. During a later discussion of jury instructions, after the Government had rested it case, the prosecutor indicated he agreed with "the court's observation in terms of it not being necessary to supplement it at this time." *Id.* at 442. Defense counsel indicated he had no objections to the jury instructions or the verdict form. *Id.* at 444-45.

As to Count 3, the trial judge gave the following instruction:

> Count Three charges the defendant with knowingly carrying a firearm – the same Armadeo Rossi .38 caliber revolver – during and in relation to the drug-trafficking offense charged in Count Two, or possessing the firearm in furtherance of that drug-trafficking offense. The

defendant can be found guilty of this offense if, and only if, all of the following facts are proved beyond a reasonable doubt:

First, that the defendant committed the drug-trafficking offense charged in Count Two of the indictment;

Second, that on or about March 17, 2007, the defendant knowingly carried or possessed the firearm described in this count – an Armadeo Rossi .38 caliber revolver; and,

Third, that the defendant, either (a), carried the firearm during and in relation to the drug-trafficking offense; or, (b), possessed the firearm in furtherance of the drug-trafficking offense.

The term "firearm" has the same meaning for this count as in Count One, the definition I gave you just a moment ago.

A firearm is carried during and in relation to a drug-trafficking offense, or possessed in furtherance of a drug-trafficking offense, only if there is a connection between the defendant, the firearm, and the drug-trafficking offense. The required connection may consist of using the firearm in some way or for some purpose related to drug trafficking. The required connection also may consist of having the firearm available for such use, even if the firearm is not, in fact, used.

Doc. 66 at 484-85. As to Count 6, the trial judge gave the following instruction, similar

to that given for Count 3:

Count Six charges the defendant with knowingly carrying a firearm, an Intratec Tec-9, 9-millimeter semiautomatic pistol, during and in relation to the drug-trafficking offense charged in Count Five, or possessing the firearm in furtherance of that drug-trafficking offense.

The defendant can be found guilty of this offense if, and only if, all of the following facts are prove[d] beyond a reasonable doubt:

First, that the defendant committed the drug-trafficking offense charged in Count Five of the indictment;

Second, that on or about April 27, 2007, the defendant knowingly carried or possessed the firearm described in this count – an Intratec TEC-9, 9-millimeter semiautomatic pistol; and,

Third, that the defendant, either (a), carried the firearm during and in relation to the drug-trafficking offense; or, (b), possessed the firearm in furtherance of the drug-trafficking offense.

The term used in – the terms used in this instruction have the same meanings I gave you earlier in connection with Count Three.

An Intratec TEC-9, 9-millimeter, semiautomatic pistol is a firearm.

*Id.* at 487-88.

Regardless of the trial judge's and attorneys' determination to omit the standard jury instruction language directing that the guilty verdict on either theory be unanimous, Defendant concedes the evidence presented at trial satisfied the "carrying during and in relation" theory. Doc. 84 at 13. Thus, even if defense counsel had moved for a JOA, such would have been denied. *See* Turner v. United States, 396 U.S. 398, 420 (1970) ("As a general rule . . . when a jury returns a guilty verdict on an indictment charging several acts in the conjunctive . . . the verdict stands if the evidence is sufficient with respect to any one of the acts charged."); *see also, e.g.*, United States v. Mingo, 237 F. App'x 860, 865 (4th Cir. 2007) (affirming general section 924(c) verdict where evidence sufficient to find defendant carried gun during drug-trafficking crime and "jury could easily conclude that Mingo 'possessed' the gun in furtherance of his drug trafficking crime"), *cert. denied*, 552 U.S. 1199 (2008). As the Government indicates, *see* Doc. 93 at 23-24, Defendant here has not shown deficient performance by trial counsel and this IAC claim should be denied.

### <u>Ground 4</u>: IAC – Failure to Move to Suppress Evidence

In Ground 4, Defendant alleges ineffective assistance of trial counsel for failure to move to suppress the evidence obtained from either or both of the two car searches in March 2007 and June 2007.  Doc. 84 at 16-17.  Defendant asserts that both warrantless searches were subject to successful challenge based on <u>Thornton v. United States</u>, 541 U.S. 615 (2004), as not searches incident to arrest because Defendant was secured in the police vehicles at the time of the searches.  *Id.* at 17.  Defendant asserts that if counsel had filed the motion to suppress, the appeal would have been controlled by <u>Arizona v. Gant</u>, 129 S.Ct. 1710 (2009), and it would have resulted in the exclusion of the evidence necessary for the verdict on Counts 1, 2, 3, and 7.  *Id.* at 17. Defendant asserts the March 2007 search was based, in part, on the purported authority of the search-incident-to-arrest exception to the warrant requirement.  *Id.* at 17-18.  As to this search, Defendant disputed the arresting officer's claim that Defendant consented to the search, and Defendant advised trial counsel of this.  *Id.* at 18.  Defendant asserts the June 2007 search was a search incident to arrest, contrary to the officer's claim that it was an inventory search.  *Id.*  If trial counsel had challenged these searches, which were searches incident to arrest, based on <u>Thornton</u>, it would have been preserved and available for a certiorari petition.  *Id.*  Defendant would have prevailed on direct appeal and, as such, the evidence required for the convictions under Counts 1, 2, 3, and 7 would have been excluded – the motion to suppress would have been dispositive on those four counts.  *Id.* at 19.

The Government responds and essentially argues these issues were addressed and resolved by Defendant's pre-trial motion for substitute counsel.  Doc. 93 at 24-25. The Government points out that the trial court denied that motion and, on appeal, the Eleventh Circuit affirmed, with the following explanation:

> The record reflects no irreconcilable conflict between Gee and Clark. Although Gee had complained earlier that Clark had failed to prepare his case for trial and had pressured him to accept a guilty plea, <u>Gee expressed, at the hearing on his motion for new counsel, concern only with Clark's failure to pursue a baseless motion to suppress.  Clark represented Gee vigorously at trial and sentencing</u>.  In light of the record, any alleged lack of communication between Gee and Clark was not so great that it prevented Gee from receiving an adequate defense.  Gee also fails to explain how he was prejudiced by being forced to proceed with Clark as his lawyer.

<u>Gee</u>, 291 F. App'x at 997 (emphasis added); Doc. 74 at 3.  Given the Eleventh Circuit's determination that a motion to suppress would have been "baseless," the Government argues this is the holding of the case and is determinative of the instant claim.  Doc. 93 at 24-25.

As referenced above, the trial court held a pre-trial hearing on Defendant's motion for substitute counsel, based in part on counsel's failure to file a motion to suppress.  Doc. 61.  Concerning Defendant's request for a motion to suppress, the court heard the prosecutor describe the searches that took place in this case.  *Id.* at 9-12. The judge then asked Defendant the basis of his request to suppress the evidence and Defendant replied that "there's no fingerprints, and wasn't nothing in my possession." *Id.* at 12.  The judge asked whether Defendant was talking about evidence found outside the apartment following the 911 call, and Defendant responded, "Yes, sir."  *Id.*

The judge then asked, "Well – and so that's your complaint, that Mr. Clark won't move to suppress that evidence?" *Id.* Defendant answered, "Yes, sir." *Id.* The judge asked Defendant if there were any other complaints about counsel and Petitioner said there were not. *Id.* at 12. The court denied the motion for substitute counsel, explaining that although it is preferable that every defendant be satisfied with his lawyer, it would waste a lot of funds to grant every such request and, in this case, "there has not been any suggestion of anything that Mr. Clark has done other than simply provide effective representation." *Id.* at 13. The court further explained that nothing presented thus far formed a basis for a motion to suppress:

> In terms of the motion to suppress, I understand Mr. Gee's statement that if drugs were found on the ground without his fingerprints, and he wasn't in possession of them, that that shouldn't be admissible against him. But evidence like this gets admitted on a fairly regular basis. Under the Federal Rules of Evidence, the test of relevance is whether any piece of evidence at issue makes any contested fact more or less likely.

> If the government provides evidence that says an officer saw Mr. Gee running at a location and then found cocaine on the ground, does that make it more likely that Mr. Gee possessed cocaine than it would be without that evidence? The obvious answer to that, if that's all there is to it, is yes. Would it be even more likely if there were fingerprints on the drugs? Sure. Is the evidence that there were drugs in the area conclusive evidence that Mr. Gee possessed it? Of course not. But those aren't the tests. The test is just whether it's more likely that Mr. Gee possessed it when it was found on the ground, if he had been running in the area, than it otherwise would be. That's the Federal Rules of Evidence, and the rule dealing with relevance.

> A motion to suppress, including no facts other than the facts that the government has tendered and Mr. Gee's comments about that evidence here this morning, would be summarily denied. That motion just wouldn't make it.

Now, if there's more to it than that, then it might. But just based on those facts, there's not a basis for a motion to suppress.

There's also nothing evident -- at least on the face of the other two matters, the traffic stop and the warrant stop of the vehicle -- nothing on the face of that suggests that there's any basis for a motion to suppress.

Now, again, I -- my job is to be the judge and to adjudicate the information brought to me. And Mr. Clark, as the defense lawyer, of course, has a duty to investigate those circumstances to see whether there is any basis for a motion to suppress. But Mr. Gee has made no suggestion here this morning of any respect in which Mr. Clark has failed to do that.

*Id.* at 14-15.

To the extent Defendant relies on the <u>Thornton</u> case in support of his argument that a motion to suppress the evidence obtained in the searches of the vehicles he was driving on March 17, 2007, and June 5, 2007, would have succeeded, that case, and earlier precedent, actually would support the denial of such a motion. *See* <u>New York v. Belton</u>, 453 U.S. 454, 460 (1981) (holding that where police officer makes lawful custodial arrest of vehicle occupant, Fourth Amendment allows officer to search passenger compartment of vehicle, and any containers therein, as contemporaneous incident of arrest); <u>Thornton</u>, 541 U.S. at 617-19, 623 (holding that "<u>Belton</u> governs even when an officer does not make contact until the person arrested has left the vehicle" and explaining that "[o]nce an officer determines that there is probable cause to make an arrest, it is reasonable to allow officers to ensure their safety and to preserve evidence by searching the entire passenger compartment"). To the extent Defendant relies on the more recent <u>Gant</u> case in support of his argument, he cannot show trial counsel was ineffective for failing to file a motion to suppress evidence of the drugs and

guns found in the vehicle searches.  *See* <u>Ezell v. United States</u>, Nos. C10-467RSM and

CR05-273RSM, 2011 WL 1900155, *1 (W.D. Wash. May 18, 2011).  The U.S. Supreme

Court granted certiorari in <u>Gant</u> on February 25, 2008, more than three months after

Defendant's trial.  *See id.*  The Court heard argument in <u>Gant</u> on October 7, 2008, and

issued its decision April 21, 2009.  <u>Gant</u>, 556 U.S. at 332, 335 (holding that "<u>Belton</u> does

not authorize a vehicle search incident to a recent occupant's arrest after the arrestee

has been secured and cannot access the interior of the vehicle" and further concluding

that, consistent with <u>Thornton</u>, "circumstances unique to the automobile context justify a

search incident to arrest when it is reasonable to believe that evidence of the offense of

arrest might be found in the vehicle").  Therefore, at the time of Defendant's trial, well

established U.S. Supreme Court precedent broadly authorized vehicle searches incident

to arrest.  *See* <u>Belton</u>, 453 U.S. at 460; <u>Thornton</u>, 541 U.S. at 617, 623.  Trial counsel's

failure to challenge that precedent did not violate an objective standard of

reasonableness and, thus, Defendant has not shown deficient performance under

<u>Strickland</u>.  *See* <u>Ezell</u>, 2011 WL 1900155 at *1.  Accordingly, this IAC claim should also

be denied.

## Conclusion

Based on the foregoing, Defendant has not shown ineffective assistance of

counsel under <u>Strickland</u>.  Therefore, his claims lack merit and his § 2255 motion should

be denied.

**Certificate of Appealability**

Rule 11(a) of the Rules Governing Section 2255 Proceedings provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

After review of the record, the undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, it is also recommended that the Court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides that "[b]efore entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.  Defendant's motion pursuant to 28 U.S.C. § 2255 (Doc. 84) be **DENIED**.

2.  A certificate of appealability be **DENIED**.

**IN CHAMBERS** at Tallahassee, Florida, on November 28, 2012.


S/   Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO PARTIES**

**Within fourteen (14) days after being served with a copy of this report and recommendation, a party may serve and file specific, written objections to the proposed findings and recommendations.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**